UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
MAY 28 2008
May 28, 2008
Judge David H. Coar
United States District Court

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 08 CR 395 |
| vs. ) | Judge David H. Coar |
| ) | |
| HUGH SHEEHY ) | |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant HUGH SHEEHY, and his attorney, TERRENCE GILLESPIE, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2. The information filed in this case, originally in the Central District of California and transferred to this district pursuant to Rule 20 of the Federal Rules of Criminal Procedure, charges defendant with having manufactured, sold and distributed unauthorized satellite television access devices in violation of Title 47, United States Code, Section 605(e)(4).

3. Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information. The information charges that defendant manufactured, sold and distributed unauthorized satellite television access devices in violation of Title 47, United States Code, Section 605(e)(4).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

At times material to the information, DirecTV, a California corporation, delivered digital entertainment and television programming to millions of homes and businesses in the United States. A consumer wishing to subscribe to DirecTV television programming must have first obtained necessary hardware items to receive the satellite signals. This hardware included a satellite dish, an integrated receiver/decoder ("IRD"), and an access card or "smart card." The access card, or smart card, operated cable networks, major studio movies, special event programming offered on a pay-per-view basis, local channels, and a variety of other sports and special interest programs and packages. The access card or "smart card" allowed end users to unscramble the encrypted transmissions from DirecTV satellites.

The access card contained computer chips with copyrighted software and acted as a re-programmable microprocessor using smart card technology to control the programming

the subscriber could view based upon the programming packages and programming purchased by the subscriber. To prevent unauthorized signal reception and program viewing, transmissions of television programming were encrypted at uplink facilities. The access card enabled the subscriber's IRD to decrypt the signals and permit program viewing in accordance with the subscriber's authorized subscription package or pay-per-view purchases.

Defendant began modifying DirecTV access cards as a hobby to enhance the channels available with DirecTV. Defendant bought the equipment used to modify the access cards over the Internet. Defendant also purchased the software used to modify the cards over the Internet. Defendant further modified that software to improve its performance. The defendant did all of the above for the purpose of illegally obtaining and stealing satellite cable programming and direct-to-home satellite services.

Defendant communicated with a number of individuals concerning his manufacture and distribution of "smart cards." Defendant was first introduced to these individuals in an Internet Relay Chat (IRC) room named the Pirate's Den. Two of the individuals defendant met in the Pirate's Den used the online screen names Skeezer and JungleMike. Defendant purchased expensive software code from Skeezer, which code defendant knew that Skeezer was not authorized to sell. Defendant paid Skeezer $3,000 for one program named Dark Lotus, which defendant used to modify DirecTV access cards to illegally obtain access to its services. Defendant paid Skeezer through Skeezer's PayPal account. After purchasing the

Dark Lotus software, defendant continued to pay Skeezer approximately $250 per month for support.

One of the computers on which defendant loaded the Dark Lotus software and reprogrammed access cards was his laptop computer. Stored on this laptop computer were 21 "bin" files. A "bin" file is a data file that represents the actual data defendant placed on the reprogrammed DirecTV access cards so that the users of the cards would receive unlimited DirecTV programming without paying DirecTV for the services. Although a "bin" file can be loaded onto an unlimited number of access cards, defendant agrees that he placed each "bin" on at least one access card, and that defendant manufactured, sold and distributed at least 21 reprogrammed access cards. Further, defendant agrees that the loss resulting to DirecTV from each of the 21 access cards sold by defendant was $780 per access card, for a total loss of $16,380.

The foregoing facts are set forth solely to assist the court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

### Maximum Statutory Penalties

7.  Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

      a.     A maximum sentence of 5 years' imprisonment. This offense also carries a maximum fine of $500,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

      b.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

      c.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

      a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b.  **Offense Level Calculations.**

      i.  The base offense level for the charge in the information is 8, pursuant to Guideline §2B5.3(a);

      ii.  The base offense level is increased 4 levels, pursuant to Guideline §§ 2B5.3(b)(1) and 2B1.1(b)(1)(C), because the infringement amount ($16,380) was more than $10,000, but less than $30,000.

      iii.  The base offense level is increased 2 levels, pursuant to Guideline §2B5.3(b)(3) because the offense involved the manufacture of infringing items.

      iv.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

c.  **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.  **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 12, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 10 to 16 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.  Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.  Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines.

The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Cooperation

10.　Defendant agrees he will fully and truthfully cooperate with the United States Attorney for the Central District of California and the Northern District of Illinois in any matter in which he is called upon to cooperate. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Only the United States Attorney for the Northern District of Illinois and the Central District of California may require defendant's cooperation pursuant to this Plea Agreement.

### Agreements Relating to Sentencing

11.　At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline §5K1.1, to depart downward from the low end of the applicable Guideline range. Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court. Defendant further understands that the government reserves the right to make whatever recommendation it deems appropriate regarding the extent of any downward departure.

12. If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1, to depart from the applicable Guideline range, as set forth above, the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1.

13. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

14. Regarding restitution, the parties acknowledge that the total amount of restitution owed to DirecTV is $16,380, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

15. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## **Presentence Investigation Report/Post-Sentence Supervision**

16. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

17. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

18. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income

tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

19. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 395.

20. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

21. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Right to be charged by indictment.** Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

    b. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where

actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

    iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

    iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.  At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c.  **Waiver of appellate and collateral rights.**  Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

      d.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

22. Defendant understands that he has the right to be prosecuted for any criminal offense in the district or districts where the offense was committed. By signing this Plea Agreement, defendant knowingly consents to prosecution of the charge against him in the Northern District of Illinois and waives any objection to the venue of this prosecution.

## Other Terms

23. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

24. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

25. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any

of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

26. Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

27. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

28. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 5-28-08

PATRICK J. FITZGERALD
United States Attorney

HUGH SHEEHY
Defendant

DANIEL J. COLLINS
Assistant U.S. Attorney

TERRENCE GILLESPIE
Attorney for Defendant